UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CODY WELLS,

            Plaintiff,            No. 15-cv-11324

vs.                                       Hon. Gerald E. Rosen

A.D. TRANSPORT EXPRESS, INC.,
and MATTHEW PERCY,

            Defendants.
_____/

OPINION AND ORDER REGARDING DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

      At a session of said Court, held in
      the U.S. Courthouse, Detroit, Michigan
      on June 10, 2016.

      PRESENT: Honorable Gerald E. Rosen
                       United States District Judge

I. INTRODUCTION

Plaintiff Cody Wells filed this action claiming that he was denied overtime pay in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. (the "FLSA"). The matter is presently before the Court on the Motion for Partial Summary Judgment filed by Defendants A.D. Transport Express, Inc. ("A.D. Transport") and Matthew Percy. Plaintiff Cody Wells has responded and Defendants have replied. Having reviewed and considered the parties' briefs and supporting exhibits, and the entire record of this matter,

1

the Court has determined that oral argument is not necessary. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), this matter will be decided on the briefs. This Opinion and Order sets forth the Court's ruling.

## II. PERTINENT FACTS

Plaintiff Cody Wells is a former employee of Defendant A.D. Transport, a Canton, Michigan-based trucking company engaged in short and long-haul shipping throughout the continental United States. Wells was hired by A.D. Transport on September 8, 2012 as a "Breakdown Associate." His regularly assigned shift was Sunday through Wednesday.

As a Breakdown Associate, Wells was responsible for ensuring the safe operation of trucks. He received calls from drivers regarding problems with the trucks and trailers while on the road, and it was Wells' responsibility to assess the problem and, with the approval of A.D. Transport's president or maintenance director, to arrange for any needed repairs. He scheduled repairs, paid the bills and invoices, and maintained the files of documents relating to the repairs. Wells' duties also included conducting road tests with new drivers and approving or disapproving them for safe operation of trucks and trailers.

Desiring to take on additional work within the company, on February 20, 2013, Wells applied for a driver position. To qualify for the driver's position, Wells was first required to complete driver training, be road-tested, and obtain certification that he was

trained on and was aware of various regulations and safety driving-related policies. He was eventually hired as a part-time driver on August 7, 2013. He maintained his responsibilities as a Breakdown Associate and continued to work in that capacity Sunday through Wednesday, and worked as a driver on his regularly scheduled days off.

When a driver makes a shipment for A.D. Transport, he or she must document in a driver's log the time he or she spent driving, off-duty, on-duty (not driving) and sleeping during any given shipment, and sign the log. A.D. Transport also maintains a separate driver's history for each driver documenting where the driver drove and when. The bills of lading for each shipment further show the starting and final destination of the goods being shipped.

After his hire as a driver, as evidenced by bills of lading, driver's logs and driver's histories, Wells performed both interstate and intrastate shipments for A.D. Transport.[1] While he sometimes drove interstate shipments, he also would sometimes drive to complete intrastate legs of interstate trips by bringing the interstate shipments to their final destination within Michigan.

Wells also recovered trucks and trailers from other states and returned them to Michigan or picked them up from elsewhere in Michigan and returned them to A.D.

---

[1] Pursuant to Federal Motor Carrier Safety Administration regulations, A.D. Transport maintains documents recording drivers' duty status and supporting documents for at least six months. Following that six-month period, A.D. Transport regularly destroys these documents.

Transport's Canton, Michigan facility. These recovery trips occurred both during his Sunday through Wednesday shift as well as on his off days.

Wells claims that he frequently worked more than 40 hours per week in both his Breakdown Associate and driver positions. He was sometimes paid straight time for the time he spent driving. Other times, he was paid based on a mileage rate or an hourly rate based on distance. It is undisputed that Wells did not receive any overtime pay.

On January 21, 2015, Wells demanded a pay raise. He was informed, however, that the company was unable to accommodate a raise at that time. Wells then informed his employer that he "would seek alternative employment" elsewhere and resigned.

On April 10, 2015, Wells filed a one-count Complaint for violation of the FLSA seeking to recover from A.D. Transport and its company president, President, Mathew Percy, the unpaid amount of overtime pay he claims is owing to him, plus liquidated damages and attorneys' fees.

Defendants now move for partial summary judgment claiming that Plaintiff was exempt from the overtime mandates of the FLSA under the Act's motor carrier exemption, 29 U.S.C. § 213(b)(1), from August 13, 2013 until his resignation on January 21, 2015.[2]

---

[2] While Defendants maintain that all work Plaintiff performed as a Breakdown Associate also is covered under the motor carrier exemption, for purposes of the instant Motion, Defendants seek only dismissal of any claim for overtime compensation from August 13, 2013 until January 21, 2015 based on the records of Plaintiff's driving and shipments during that time period.

III. DISCUSSION

A. APPLICABLE STANDARDS

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Moreover, any supporting or opposing affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal

quotation marks, and citation omitted). The Court will apply the foregoing standards in deciding Defendant's motion for partial summary judgment in this case.

B.     PLAINTIFF WAS AN EXEMPT DRIVER COVERED BY THE MOTOR CARRIER ACT EXEMPTION FROM AUGUST 13, 2013 TO JANUARY 21, 2015.

The FLSA requires that an employer pay employees at 1 ½ times the hourly rate for hours worked in excess of 40 hours per week. 29 U.S.C. § 207(a)(1); *Baird v. Wagoner Transp. Co.*, 425 F.2d 407, 409, (6th Cir.), *cert. denied*, 400 U.S. 829 (1970); *Tumpkin v. Andrews Delivery Servs.*, 2014 WL 2863180 at *1 (E.D. Mich. June 24, 2014). Section 13(b)(1) of the Act, however, exempts from overtime compensation "any employee with respect to whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1). This statutory exemption to the FLSA's overtime provisions, colloquially referred to as the "motor carrier exemption," is to be narrowly construed against the employer seeking to assert it, and the employer bears the burden of proof as to the applicability of the exemption. *See Martin v. Indiana Michigan Power Co.*, 381 F.3d 574, 578 (6th Cir.2004).

"The exemption of an employee from the hours provisions of the Fair Labor Standards Act under section 13(b)(1) depends both on the class to which his employer belongs and on the class of work involved in the employee's job." 29 C.F.R. § 782.2(a). The exemption only applies to employees who:

> (1) Are employed by carriers whose transportation of passengers or property by motor vehicle is subject to [the Secretary of Transportation's] jurisdiction under section 204 of the Motor Carrier Act, and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.

*Id.*

Plaintiff does not dispute that A.D. Transport is a carrier that is subject to the Secretary of Transportation's jurisdiction. However, he disputes that he sufficiently engaged in activities that are covered by the exemption.

The question whether an employee's particular activities excluded him from the overtime benefits of the FLSA is a question of law for the court to decide. *Icicle Seafoods, Inc. v. Worthington,* 475 U.S. 709, 714 105 S. Ct.1527, 1530 (1986); *Ale v. Tennessee Valley Auth.*, 269 F.3d 680, 691 (6th Cir. 2001).

As provided in the regulations, the FLSA's motor carrier exemption only applies to employees who work, wholly or in part, as drivers, driver's helpers, loaders or mechanics, and whose duties "affect[] the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce." 29 C.F.R. § 782(b)(2); *United States v. American Trucking Assns.,*, 301 U.S. 534, 553, 60 S.Ct. 1059, 1069 (1940); *Levinson v. Spector Motor Service*, 330 U.S. 649; 67 S.Ct. 931 (1947); *Thompson v. K.R. Drenth Trucking, Inc.*, 2011 WL 2446282 at *2-3 (S.D. Ind. June 15, 2011). Neither the name given to an employee's position nor that given to the work he

does is controlling; instead it is the character of the activities involved in the performance of his job that controls. 29 C.F.R. § 782.2(b)(2); *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 707, 97 S.Ct. 954, 960 (1947); *Allen v. Coil Tubing Servs., L.L.C.,* 755 F.3d 279, 283 84 (5th Cir. 2014); *see also Freeman v. National Broadcasting Co.*, 846 F. Supp. 1109, 1114 (S.D.N.Y. 1993), *rev'd on other grounds*, 80 F.3d 78 (2nd Cir. 1996) ("Titles alone are of little or no assistance in determining an employee's exempt or nonexempt status.") Therefore, even though an employee may have a different title, if the activities involved in the performance of his job include interstate driving, as defined in the applicable statutes and regulations, his work falls within the Section 213(b)(1) exemption. "The work of an employee who is a full-duty or partial-duty 'driver'. . . directly affects 'safety of operation' within the meaning of section 204 of the Motor Carrier Act whenever he drives a motor vehicle in interstate or foreign commerce within the meaning of that act," 29 C.F.R. § 782.3(b); *Finney v. Free Enterprise System, Inc.*, 2012 WL 5462971 at *4 (W.D. Ky. Nov. 8, 2012).

    Plaintiff here does not dispute that he was subject to the exemption on the days when he drove outside of Michigan because "[h]ighway transportation by motor vehicle from one State to another, in the course of which the vehicles cross the State line, clearly constitutes interstate commerce." 29 C.F.R. §782.7(b)(1). "Actual driving in interstate commerce clearly renders a driver exempt from the FLSA for a period of time." *Finney v. Free Enter. Sys.*, 2012 WL 5462971 (W.D. Ky. Nov. 8, 2012).

However, not only is driving between different states covered by the exemption; intrastate driving also is covered if "the goods or people being transported are in the process of being transported from another state." 29 C.F.R. § 782.7(b)(2); *Morris v. McComb*, 332 U.S. 442, 68 S.Ct. 131 (1947). Though Plaintiff acknowledges that he drove intrastate to transport goods that were in the process of being transported to or from another state, because Defendants' evidence only identifies 11 instances of such transport, he argues that this evidence does not satisfy Defendant's burden of establishing "by a preponderance of the clear and affirmative evidence" that all of Plaintiff's intrastate trips were covered by the exemption. *Renfro v. Indiana Michigan Power Co.*, 370 F.3d 512, 515 (6th Cir. 2004).

However, regulations of Department of Transportation direct that "[e]vidence of driving in interstate commerce or being subject to interstate commerce should be accepted as proof the driver is subject to [the motor carrier exemption] for a 4-month period from the date of the proof." 46 Fed. Reg. 37,902, *Application of the Federal Motor Carrier Safety Regulations* (July 23, 1981). In so ruling, the DOT specifically rejected application of the "week-by-week" and the *de minimus* approach argued by Plaintiff. *Id.* "[T]he 4-month period is reasonable because it avoids both the too strict week-by-week approach and the situation where a driver could be used or be subject to being used once and remain subject to [the exemption] for an unlimited time." *Id.*

The Department of Labor has accepted this 4-month rule. As set forth in its Field

9

Operation Handbook:

> Where such evidence [of driving in interstate commerce or of an employee's reasonable expectation of making an interstate run in the regular course of his/her employment] is developed with regard to an employee, DOT will assert jurisdiction over that employee for a 4-month period beginning with the date they could have been called upon to, or actually did, engage in the carrier's interstate activity. Thus, such employees would be exempt under Sec 13(b)(1) for the same 4-month period.

*See* DOL Wage and Hour Division's Field Operations Handbook, § 24e01(b).

Moreover, numerous courts have applied the 4-month rule. *See e.g., Molina v. First line Solutions LLC*, 566 F. Supp. 2d 770, 782-83 (N.D. Ill. 2007) ("[A]n employee will be considered to be engaging in transportation in interstate commerce for four months after each proven incident of transporting a shipment in interstate commerce."); *Ballou v. DET Distrib. Co.,* 2006 WL 2035729 at *14 (M.D. Tenn. July 17, 2006) ("Where a carrier has been shown to operate in interstate commerce, the Secretary of Transportation will assert jurisdiction over an employee for a 4-month period beginning on the last date the employee could have been called upon to made an interstate run."); *Chao v. Gary Bauerly, LLC*, 2005 WL 1656915 at *4 n. 2 (D. Minn. July 14, 2005) ("Evidence that an employee drove in interstate commerce or was subject to being used in interstate commerce is sufficient to exempt the employee for a four month period."); *Veliz v. Cintas Corp.*, 2008 WL 4911238 at * 6 (N.D. Cal. Nov. 13, 2008) (finding it "sufficient, from time to time within any four month period that the employee actually transports or is available to transport across state lines as part of the employee's regular

course of employment"); *Buscarino v. TQ Logistics*, 2010 WL 3211708 (D.S.C. Aug. 11, 2010) (adopting 4-month rule and stating that for the exemption to apply the employer will need to show that each employee seeking overtime was subject to being used in interstate commerce at some point at least four months prior to the pay period at issue); *see also Badgett v. Rent-Way, Inc.*, 350 F. Supp. 2d 642, 654-57 (W.D. Pa. 2004); *Elliot v. Dave Ernstes & Sons Trucking*, 2006 WL 2849705 at * 5-6 (S.D. Ind. Oct. 3, 2006).

Furthermore, actual driving need not necessarily occur in order for the driver to be exempt; the exemption begins the date the driver could have been called upon to, or actually did, engage in the carrier's interstate activities. *See Badgett, supra*, 350 F. Supp. 2d at 657 (finding employees within the exemption "regardless of the number of interstate/intrastate trips they actually made because, at all relevant times, they could have been called upon in the regular course of their employment to make trips affecting interstate commerce"); *Roberts v. Cowan Distrib. Servs*., LLC, 58 F. Supp. 3d 593, 611 (E.D.Va. 2014) ("Even where the employer assigns relatively few interstate routes, the [motor carrier exemption] applies where any driver could have received one of those routes.") (citation omitted); *Masson v. Ecolab, Inc*., 2005 WL 2000133, at *6 (S.D.N.Y. Aug.17, 2005) ("[I]f the employee is or 'is likely' to be 'called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities,' he falls under the exemption 'in all workweeks when he is employed at such job.' ") (quoting 29 C.F.R. § 782.2(b)(3)). *See also Buscarino*, *supra* (exemption applies

11

if employee "*was subject to being used* in interstate commerce at some point at least four months prior to the pay period at issue"); *Ballou*, supra ("[T]he Secretary of Transportation will assert jurisdiction over an employee for a 4-month period beginning on the last date the employee *could have been called upon* to made an interstate run."); *Veliz, supra* (exemption applies if "from time to time within any four month period the employee actually transports or *is available to transport* across state lines"); *Chao, supra* ("Evidence that an employee drove in interstate commerce *or was subject to being used* in interstate commerce is sufficient.)

Defendant has presented evidence that Plaintiff drove in interstate commerce at least once every 4-month period from August 13, 2013 through January 21, 2015. [*See* Declaration of Gary Percy, Defendants' Ex. 1 and documentary evidence at Ex. 1-F.] In fact, the records produced by Defendants establish that in some instances Plaintiff drove interstate or qualifying intrastate shipments three to four times in one month. *Id.*, Ex. 1-F. Plaintiff does not dispute that he drove in interstate commerce on the dates indicated.

Furthermore, as indicated above, the week-by-week approach advocated by Plaintiff has been rejected by both the DOT and the courts. *See e.g.,* 46 Fed. Reg. 37,902, *Application of the Federal Motor Carrier Safety Regulations* (July 23, 1981); *Molina v. First Line Solutions, LLC*, 556 F. Supp. 2d at 782-83; *Veliz v. Cintas Corp.*, 2008 WL 4911238 at * 6; *Elliot v. Ernstes & Sons Trucking*, 2006 WL 2849705 at * 5-6 (refusing to analyze the employee's activities on a week-by-week basis because at "[a]ny

time during their employment, these drivers could have been asked to travel out of state" and thus were "likely to engage in interstate commerce during their employment"); *Jaramillo v. Guarda, Inc.*, 2012 WL 4955932 (N.D. Ill. Oct. 17, 2012) (declining the week-by-week approach as burdensome). The four-month period is considered a reasonable method because it avoids "both the too strict week-by-week approach and the situation where a driver could be used or be subject to being used once and remain subject to jurisdiction under 49 U.S.C. 304 for an unlimited time." *Badgett v. Rent-Way, Inc., supra*, 350 F. Supp. 2d at 657.

Finally, Plaintiff's contention that he had discretion to determine whether or not to accept driving assignments does not remove him from the motor carrier exemption. *Bakkestuen v. Lepke Holdings, LLC*, 2015 WL 5944226 at * 6(W.D. Wis. Oct. 13, 2015) ("the right to decline routes offered to him . . . makes no difference because [plaintiff] could and did choose to drive an interstate route"); *Elliot, supra*, 2006 WL 2849705 at * 6. As in *Bakkestuen*, Plaintiff here used his discretion to accept both interstate and qualifying intrastate routes. Plaintiff has produced no evidence showing that he declined interstate or qualifying intrastate shipments or that he could not have been asked to drive such shipments at any time.

For all of the foregoing reasons, and by application of the four-month rule, the Court concludes that Plaintiff was exempt from the FLSA's overtime compensation requirements from August 13, 2013 to January 21, 2015 pursuant to the FLSA's motor

carrier exemption, 29 U.S.C. 213(b)(1).

## CONCLUSION

For the reasons set forth above in this Opinion and Order,

IT IS HEREBY ORDERED that Defendant's Motion for Partial Summary Judgment **[Dkt. # 11]** is GRANTED.  Accordingly,

IT IS FURTHER ORDERED that Plaintiff's claim for overtime compensation for the period from August 13, 2013 to January 21, 2015 is DISMISSED, WITH PREJUDICE.

SO ORDERED.


                    s/Gerald E. Rosen
                    United States District Judge

Dated:  June 10, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 10, 2016, by electronic and/or ordinary mail.

                    s/Kelly Winslow for Julie Owens
                    Case Manager, (313) 234-5135